IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| PATRICK ERRICO and ADELIA ERRICO, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 200391N |
| | ) | |
| v. | ) | |
| | ) | |
| LINCOLN COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **ORDER OF DISMISSAL** |

This matter came before the court on Defendant's motion to dismiss (motion) filed December 31, 2020. A case management conference was held on January 27, 2021, during which the parties discussed Plaintiffs' appeal and the court's authority to correct a square footage error, as requested by Plaintiffs. The court gave the parties additional time to confer and attempt to reach a resolution. The parties were unable to reach a resolution and requested a second case management conference, which was held February 23, 2021, during which Defendant explained that it did not think a correction was merited for any of the tax years appealed. Plaintiffs declined to submit additional evidence or briefing in response to Defendant's motion, so the court took this matter under advisement.[1]

## I. FACTUAL BACKGROUND AND PLAINTIFFS' REQUESTED RELIEF

Plaintiffs appealed the "1996 thru 2020" tax years alleging a square footage error. (Am Compl at 1.) Defendant made Plaintiffs' requested correction for the 2020-21 tax year under ORS 311.234 and moved to dismiss the remaining tax years because "no statute allows Assessor to take requested action." (Compl at 8, Ans at 1.)

---

[1] In a letter dated February 24, 2021, the court requested that Defendant submit "evidence" that it referenced in its February 1, 2021, letter and gave Plaintiffs an opportunity to respond after Defendant did so.

Plaintiffs purchased the subject property lot in March 1994 and subsequently built a home on the lot that was completed by October 31, 1994. (Compl at 2.) A building permit dated from 1994 identifies the square feet as 1,584. (Ptfs' Ltr at 2, Feb 8, 2021.) The subject property appraisal card reflecting an inspection on April 21, 1995, lists the appraised improvement value as $151,100. (Def's Ltr, Mar 1, 2021). Plaintiffs received their property tax statement in fall 1995 and appealed it. (Compl at 2.) They attended a board of equalization (BOE) hearing on March 18, 1996, and "won [their] case proving that total living square footage was 1600 not 2640 [that Defendant] had recorded in their system." (*Id.*) A record for the subject property reflects the BOE hearing on March 18, 1996, listing the "final decision" as "value decrease-approved by board" and identifies the taxpayer's values as $26,040 land; $89,000 building; and $115,040 total. (*Id.* at 3.) Defendant's records reflect the BOE appeal[2] with the resulting values: $26,040 (land); $107,590 (improvements); and $133,630 (total). (Def's Ltr, Mar 1, 2021.)

The parties submitted records of the subject property's value for the 1996-97, 1997-98, and 2004-05 through 2020-21 tax years. (Def's Ltr, Mar 1, 2021; Am Compl at 3-16.) The subject property's 1996-97 real market and assessed values were $135,430. (Def's Ltr, Mar 1, 2021.) Its 1997-98 real market value was $138,770 and its "M50" assessed value was $120,270. (*Id.*) The subject property's 2003-04 real market value was $140,440 and its assessed value was $138,880.[3] (Am Compl at 3.) For every subsequent tax year, the real market value exceeds the maximum assessed value. (*Id.* at 3-16.) The values for the 2017-18 through 2019-20 tax years were as follows:

---

[2] The 1995 History includes the code "CHGBOE," which the court understands to mean a change occurred at the BOE. (Def's Ltr, Mar 1, 2021.)

[3] The 2004-05 property tax statements lists the prior tax year's values.

|          | Tax Roll RMV | Tax Roll AV | Def RMV[4] | Def MAV[5] | %Change RMV |
|----------|--------------|-------------|------------|------------|-------------|
| 2017-18  | $318,160     | $209,970    | $323,000   |            | +1.5%       |
| 2018-19  | $375,310     | $216,260    | $342,000   | $170,810   | -8.9%       |
| 2019-20  | $395,070     | $222,740    | $365,000   | $175,940   | -7.6%       |

In the course of selling the subject property in 2020,[6] Plaintiffs discovered that Defendant's records continued to erroneously list it as 2,640 square feet. (Compl at 2.) Defendant's appraiser agreed to measure the subject property and "confirmed that [the] actual living square footage was 1584[.]"[7] (*Id.*) Plaintiffs maintain that Defendant failed to correct its records following their successful BOE appeal in 1996 and request a "[r]efund for 25 yrs of overcharge of 1056 sq. ft." (*Id.* at 1.) Defendant responds that the BOE reduced the subject property's 1995-96 real market value based on the square footage error and the newly created 1997-98 maximum assessed value was correctly calculated as the 1995-96 real market value less 10 percent. (Def's Ltr, Feb 1, 2021.) The maximum assessed value "has been carried forward ever since" and, therefore, reflects the correct square footage. (Def's Ltr, Feb 1, 2021.)

## II. ANALYSIS

The issue presented is whether the court may order a correction to the subject property's value for any of the tax years from 1996-97 through 2020-21.[8]

---

[4] Defendant reported these values during the case management conference on February 23, 2021.

[5] Defendant offered these maximum assessed value calculations "should the court find [ORS 305.288] relevant * * *." (Def's Ltr, Feb 1, 2021.)

[6] At the case management conference held February 23, 2020, Plaintiffs reported that they sold the subject property for $380,000. Defendant said the price was $385,000.

[7] Defendant confirmed by email dated November 9, 2020, that the subject property living area is 1,584 square feet. (Compl at 5.) Based on the square footage error, Defendant corrected the subject property's 2020-21 real market value to $323,210, and its maximum assessed value and assessed value to $181,220. (*Id.* at 6.) As a result, Plaintiffs received a refund of $615.29. (*Id.* at 8.)

[8] It is unclear whether Plaintiffs intend to appeal the 2020-21 tax year given that they received a square footage correction from Defendant for that year and have not requested any other relief for that year.

Oregon law provides several options for taxpayers who seek to challenge the value assigned to their property. The primary option is appealing to the Board of Property Tax Appeals (BOPTA) under ORS 309.100, with review by this court available under ORS 305.275(4).[9] If a taxpayer misses the deadline to appeal to BOPTA or fails to timely appeal a BOPTA order, they may seek relief from this court under ORS 305.288. That statute permits the court to order a change or correction for the current and two prior tax years in two circumstances. First, if the taxpayer alleges and proves an error of at least 20 percent in property used as a dwelling. ORS 305.288(1). Second, if the taxpayer establishes "good and sufficient cause" for failing to timely appeal. ORS 305.288(3). A taxpayer may also petition the Oregon Department of Revenue to exercise its supervisory authority to correct the roll "for the current tax year and for either of the two tax years immediately preceding the current tax year * * *." ORS 306.115(3). The court reviews such decisions for abuse of discretion. *ADC Kentrox I v. Dept. of Rev.*, 19 OTR 91, 101 (2006).[10] Finally, the assessor may correct certain types of errors on the roll under ORS 311.205, which authorizes a correction for the current and prior five tax years.

A.    *BOPTA*

A taxpayer may appeal an assessment to the county BOPTA during the period between the mailing of tax statements in October and December 31st of that same property tax year. ORS 309.100.[11] A taxpayer may appeal a BOPTA order to the Magistrate Division of this court within 30 days of the order. ORS 309.110(7); ORS 305.275(3); ORS 305.280(4). "If a taxpayer may appeal to [BOPTA] under ORS 309.100," then no appeal may be taken to this court. ORS

---

[9] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2019.

[10] The court is unaware of any such petition filed in this case.

[11] ORS 311.250(1) requires the tax collector to deliver or mail tax statements to property owners by October 25, including "a written statement of property taxes payable on the following November 15."

305.275(3). Here, Plaintiffs appealed to the BOE (the predecessor to BOPTA) for the 1995-96 tax year and received a value reduction. They could have appealed to BOPTA for any subsequent tax year if they thought the subject property's value was in error.

B.      *20 Percent Error and Good and Sufficient Cause—ORS 305.288*

ORS 305.288 potentially "provides two additional routes to relief" when a taxpayer fails to appeal to BOPTA or fails to timely appeal from a BOPTA order. *See Zervis v. Dept. of Rev.*, 20 OTR 79, 83 (2010). First, the court may order a correction for "property used primarily as a dwelling" if the taxpayer alleges and proves a 20 percent or greater error in real market value. ORS 305.288(1). Here, the subject property is dwelling. However, Plaintiffs have not alleged a 20 percent error in *real market value*.[12] Even though the square footage error exceeds 20 percent (2,640 vs. 1,584 square feet), it is unclear how the difference impacts real market value and Plaintiffs declined to offer any evidence on that question.[13] Defendant's revised real market value calculations do not satisfy the 20 percent error test.

Second, the court may order a change or correction if "good and sufficient cause" exists for the taxpayer's failure to pursue the statutory right of appeal. ORS 305.288(3). "Good and sufficient cause" is "an extraordinary circumstance that is beyond the control of the taxpayer * * * and that causes the taxpayer * * * to fail to pursue the statutory right of appeal." ORS 305.288(5)(b)(A). It "[d]oes not include inadvertence, oversight, lack of knowledge, hardship or reliance on misleading information provided by any person except an authorized tax official * * *." ORS 305.288(5)(b)(B). Plaintiffs have not alleged "good and sufficient cause" for failing to timely appeal any prior tax years.

---

[12] Indeed, Plaintiffs have not alleged real market values for any of the years appealed.

[13] For example, in the context of errors under ORS 311.205, the Oregon Department of Revenue has stated that square footage errors may be errors in valuation judgment rather than clerical errors due to the numerous factors affecting value. OAR 150-311-0150(1)(b).

Their pleadings imply that they did not pursue an appeal because they relied on Defendant to correct the tax roll following their successful BOE in appeal for the 1995-96 tax year.[14]  Nevertheless, Plaintiffs received property tax statements for each subsequent tax year and thus knew what values were placed on the tax roll; they could have appealed in any prior year if they thought the value was incorrect.

C.        *Correction of Error on Property Tax Roll—ORS 311.205*

ORS 311.205(1)(a) authorizes the officer in charge of the roll to correct "clerical errors," which are ones that (i) arise from an error in the assessor's tax records[15]; (ii) "would have been corrected as a matter of course" had the assessor discovered it; and (iii) "[f]or which the information necessary to make the correction is contained in the records."  "Clerical errors include, but are not limited to, arithmetic and copying errors and the omission or misstatement of a land, improvement or other property value on the roll."  ORS 311.205(1)(a)(B).  Errors in valuation judgment are "ones in which the assessor * * * would arrive at a different opinion of value."  ORS 311.205(1)(b)(D).  "The officer may correct an error in valuation judgment at any time in any account when an appeal has been filed in the tax court alleging that the value on the roll is incorrect, if the correction results in a reduction of the tax owed on the account."  ORS 311.205(1)(b)(A).[16]  If it is unclear whether an error is a clerical error or an error in valuation judgment, the error shall be considered an error in valuation judgment.  OAR 150-311-0150(2).

---

[14] For example, Plaintiffs wrote "Lincoln County promised to change and update their records to reflect correct square footage of approximately 1600."  (Compl at 2.)

[15] "Records include, but are not limited to, field notes, the assessment roll, tax cards, deeds, vouchers and appraisal cards and jackets, which are regularly maintained by the assessor's office and used to determine value."  OAR 150-311-0140(3)(a).

[16] This language was added in 2007.  *See* Or Laws 2007, ch 590, §2.  It replaced the following language: "The officer may not correct an error in valuation judgment, except as provided in ORS 308.242(2) and (3)."  *See id.* At that time, ORS 308.242(2) and (3) provided for corrections resulting in a value reduction after the rolls were certified in limited circumstances.  Or Laws 2007, ch 590, §1.

The correction authorized is for "any year or years not exceeding five years prior to the last certified roll." ORS 311.205(2)(a).

Defendant determined that the error in the subject property's square footage was not a clerical error and so declined to correct it on that basis. (Def's Ltr, Feb 1, 2021.) Defendant reasoned that the error could not have been determined without physically inspecting and measuring the subject property. (*See id.*) The relevant administrative rule, OAR 150-311-0150, and case law from this court both tend to support Defendant's view.[17] *See, e.g., Seifert v. Dept. of Rev.*, 14 OTR 401, 403 (1998) (a square footage error was not a "clerical error" correctable under ORS 311.205 because "[t]here [was] no way to determine from looking at the records that an error even exists[;]" an inspection of the house was required); *Su v. Dept. of Rev.*, 15 OTR 305 (2001) (square footage error was not a clerical error because it was not discoverable from the assessor's records; rather, an

_____

[17] However, Example 2 in the administrative rule indicates there are some types of square footage errors that may be correctable as clerical errors:

> "A taxpayer sold two acres of his 8.33 acre parcel. Upon notice of that sale, the assessor's office started the administrative process of setting up a new account and revising the value of the old account. The new account cards for the two-acre parcel were set up and the value put on the roll. However, in the administrative process, no change in the acreage and value was made on the old appraisal envelopes and cards for the remaining 6.33 acres. Consequently, the remaining 6.33 acres were placed upon the roll at the same values used prior to the sale. There are two errors to consider here. One is the fact that the assessor placed the original 8.33 acreage on the roll at the same value used prior to the sale. This is an error in valuation judgment, not a clerical error. Although this may appear to be a mathematical error due to the failure of one of the clerks, it could just as well be the assessor mistaken in fact and judgment. The situation is similar to that of an assessor mistaken as to the number of acres or the number of square feet in a given property. The figures may be wrong but the assessor's judgment of the parcel's value may be right. Simply 'subtracting' the prorated value of the two-acre parcel from the value of the 8.33 acre parcel does not necessarily result in the real market value for the 6.33 acre parcel. The appraiser must also look to the highest and best use, lay of the land, and other considerations that would affect value. In these circumstances, the statutory scheme requires that the taxpayer be sufficiently cognizant of his property values to object and appeal if necessary. Since both the appraisal cards and the assessment roll were not changed, it must be presumed that the assessor intended those values to be used, subject to appeal. *The second error is the failure of the assessor to reduce the acreage on the original parcel from 8.33 to 6.33 acres. This is a clerical error because the correct facts are evident from the assessor records and there is no speculation or conjecture as to value.*"

OAR 150-311-0150(1)(c) (emphasis added).

inspection and measurement of the property was required); *Strub v. Lane County Assessor*, 2008 TC-MD 080176B, WL 5050622 (Or Tax M Div Nov 21, 2008) (assessor cannot know an error exists "[w]hen an appraiser simply fails to measure a property correctly").

Assuming the alleged error is one of valuation judgment, Defendant may correct it "if the correction results in a reduction of the tax owed on the account." ORS 311.205(1)(b)(A).[18] Defendant did not directly address whether it could correct the error here as one of valuation judgment, but it presented evidence that the 1995-96 real market value and initial 1997-98 maximum assessed value were calculated reflecting the BOE's correction of the square footage error. As Defendant noted and the property tax records reveal, the subject property's taxes have been assessed based on its maximum assessed value. *See* ORS 308.146(2) (assessed value is lesser of real market value and maximum assessed value).

Plaintiffs continue to insist that they have overpaid property taxes based on an "inflated square footage" and dismiss the evidence of a roll correction for the 1995-96 tax year, writing "[t]his is not tied in with tax rolls." (Ptfs' Ltr, Mar 8, 2021.) Plaintiffs emphasize the fact that Defendant corrected the subject property's square footage for the 2020-21 tax year and issued them a refund of $628.04. (*Id.*) Plaintiffs ask the court to infer that an error existed for prior tax years based on that correction and to reduce the taxes assessed by the same proportion. (*See id.*) Generally, each year stands alone and the court cannot order a change to one tax year based on a correction to another tax year. *See, e.g., Safley v. Jackson County Assessor*, TC-MD 091206C, 2010 WL 4923355 (Or Tax M Div, Dec 2, 2010) (concluding that claim preclusion did not bar

---

[18] The statute also requires that "an appeal [have] been filed in the tax court alleging that the value on the roll is incorrect[.]" ORS 311.205(1)(b)(A). Although Plaintiffs have not alleged a real market value, they contend that they have been "overcharge[d]" as a result of the square footage error, implying the value is incorrect. (Compl at 1.) Thus, that condition of the statute is satisfied.

the county from disqualifying property from special assessment despite two prior unsuccessful attempts to do so because each tax year stands alone and is its own cause of action). Plaintiffs have not presented evidence to support their allegation that they overpaid taxes based on a square footage error or that a correction of the error would result in a reduction of taxes owed for any year appealed. *See* ORS 305.427 (the party seeking affirmative relief bears the burden of proof by a preponderance of the evidence). Thus, the alleged square footage error does not qualify for correction under ORS 311.205(1)(b)(A).

## III. CONCLUSION

Upon careful consideration, the court concludes that no authority supports Plaintiffs' requested relief for the 1996-97 through 2020-21 tax years. Now, therefore,

IT IS ORDERED that Defendant's motion to dismiss is granted. Plaintiffs' appeal is dismissed.

Dated this _____ day of March 2021.


_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE


*This is a dispositive order pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's decision when all issues have been resolved. See TCR-MD 19.*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on March 16, 2021.*